UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

VALERIE SMITH, SHERRIE DENTON,
and JOSH RAGLAND,

    Plaintiffs,

v.                                                                                                                                                No. 2:19-cv-00796-JCH-SMV

THE CITY OF HOBBS, J. GUY, a Hobbs
Police Department Officer, and HAYDEN WALKER,
a Hobbs Police Department Officer,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Valerie Smith and Josh Ragland's Motion for Summary Judgment (ECF No. 44).[1] After carefully considering the motion, briefs, and relevant law, the Court concludes that the motion should be **granted** with respect to Plaintiffs' claim against Hobbs Police Department Officer J. Guy, but **denied** with respect to their claim against the City of Hobbs.

**I.    FACTUAL BACKGROUND**

Most of the facts necessary to resolve the instant motion are set forth in the Court's previous Memorandum Opinion and Order granting summary judgment to Plaintiffs on their allegation that Officer Guy entered their bedroom and seized Plaintiff Josh Ragland without justification. *See* Mem. Op. and Order, ECF No. 41 (Order). The Court republishes from its prior Order the relevant facts needed to decide the instant motion, which presents the question of

---

[1]     Plaintiff Sherrie Denton has been dismissed as a party.

whether Officer Guy and the City of Hobbs also violated Article II, Section 10 of the New Mexico Constitution.

In November 2017, Hobbs, New Mexico Police Department Officers J. Guy and Hayden Walker were investigating a report of a stolen truck. The truck was owned by a Texas resident. She told Texas police that her daughter, Sheridan Silipo, or Sheridan's boyfriend, Plaintiff Josh Ragland, stole the truck. Texas police contacted Hobbs police and relayed that the truck was at a Hobbs residence owned by Plaintiff Valerie Smith. Ms. Smith and her daughter, Plaintiff Sherrie Denton, resided together. Mr. Ragland is Ms. Denton's son and the grandson of Ms. Smith. Texas police also relayed to Hobbs police that Mr. Ragland and Ms. Silipo were the theft suspects.

Upon arriving at the Smith/Denton residence, Officer Walker observed the truck in the driveway and the truck showed up as stolen in the National Crime Information Center's database. Officers Guy and Walker went to Plaintiffs' home and approached the residence. Officers knew that Mr. Ragland's bedroom was located on the corner of the house, and Officer Guy told his colleagues that he had been to the house before.

…

Officer Walker knocked, announced his presence, and told Ms. Denton that officers were investigating a crime. Speaking through the closed front door Ms. Denton responded, "we're not dressed." … Walker said, "I really need to talk to you," and Ms. Denton asked him "why?" He said that he was investigating a crime, to which Ms. Denton responded, "My car?" "Yes," the officer answered, and Ms. Denton said, "oh, that's not a problem. Hang on a second."

About a minute later, Ms. Denton opened the front door and the exterior storm door and said "come in." … During this period Officer Walker asked Ms. Denton her name and the whereabouts of her son, Mr. Ragland. After telling Officer Walker that Mr. Ragland was in Texas, Ms. Denton told the officer to "go ahead and come in," and gave Walker permission to enter the vestibule, which he did.

As they stood in the vestibule, Officer Walker asked, "is this Josh's room back in here?" Ms. Denton said, "uh-huh," and Officer Walker asked, "Do you mind if I look in there to see if he's here?" Ms. Denton repeated that her son was not at home but that his girlfriend Sheridan Silipo was "back there." Officer Walker said, "do you mind if I – well, I need to talk to Sheridan." ….

Officer Walker found Ms. Silipo in a bedroom and began talking to her. Walker immediately asked her where Mr. Ragland was, and she responded he was "in there" while pointing towards a different room. In response, Officer Guy entered a nearby room, shined his flashlight around, and exited after observing it was

2

>vacant. He then came back and told Walker that Mr. Ragland was not in the room he had just searched. Officer Walker again asked Ms. Silipo where Mr. Ragland was and when she last saw him. She responded that she saw him "hours ago." Also during this exchange, Ms. Silipo told Officer Walker that the truck was in the driveway was hers.
>
>Meanwhile, Officer Guy began searching nearby rooms by shining his flashlight within them. Guy then encountered Ms. Denton in the hallway. Nearby was a darkened room with the door open. Guy indicated towards the room and asked, "Josh isn't in here?" Ms. Denton said, "No. That's my mother's room." Officer Guy advanced towards the room. As he did so, Ms. Denton said, "please don't go in there." Officer Guy went into the room anyway, telling Ms. Denton that he was "going to make sure Josh [was not] hiding in [t]here."
>
>Officer Guy quickly found Mr. Ragland hiding and placed him in handcuffs….
>
>Officers arrested Mr. Ragland at some point in the investigation after they discovered [that he had an outstanding] warrant, which they were initially unaware of when they encountered him. Ms. Silipo and Mr. Ragland were eventually transported to Hobbs City Jail for booking.

Order at 2-6 (record citations omitted).

## II. DISCUSSION

### A. Timeliness of Plaintiffs' Motion

The Court previously granted summary judgment to Plaintiffs on their allegation that Officer Guy's search of the Smith/Denton bedroom and arrest of Mr. Ragland was not a protective sweep nor justified by a warrant, consent, or exigent circumstances. The state-law portion of Plaintiffs' complaint incorporated by reference the allegations giving rise to the Fourth Amendment violation, but their prior summary judgment motion made no mention of their state-law claim.

The Court therefore ordered Plaintiffs to notify the Court about the status of their state-law claim and permitted them leave to file a dispositive motion within 21-days of filing their notice. On December 14, 2020, Plaintiffs filed a notice stating that they intended to file a summary judgment motion. They then filed their motion on January 5, 2021.

According to Defendants, Plaintiffs' motion was due on January 4, and therefore is late by one day. Defendants would be correct if the Court set a fixed calendar date for Plaintiffs to file their motion. However, because their motion was required to be filed "within 21 days" of filing their notice, Fed. R. Civ. P. 6(a)(1)(A) excludes from calculation "the day of the event that triggers the period." *See* Fed. R. Civ. P. 6(a) advisory committee's note to 2009 amendment ("The time-computation provisions of subdivision (a) apply only when a time period must be computed. They do not apply when a fixed time to act is set …. If, for example, the date for filing is 'no later than November 1, 2007,' subdivision (a) does not govern. But if a filing is required to be made 'within 10 days' or 'within 72 hours,' subdivision (a) describes how that deadline is computed.")

Because Plaintiffs' summary judgment motion was due "within 21 days" of their notice, Rule 6(a) governs. The event that triggered the time period was Plaintiffs' filing of their December 14, 2020 notice. Because Rule 6(a) excludes the day of the event beginning the time period from calculation, the 21-day period began to run on December 15, 2020. Measured from this date, the twenty-first day was January 5, 2021, which is the day that Plaintiffs' timely filed their motion.

### B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. At the summary judgment stage a court must "view facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).  "A fact is 'material' if, under the governing law, it could have

an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

Because Plaintiffs bear the burden of proof on their claims at trial, they must first affirmatively show that, on all the essential elements of their claims, no reasonable jury could find for Defendants. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J. dissenting). "Summary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Leone*, 810 F.3d at 1153 (quoting *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id.*

### i. Officer Guy

The Court previously ruled that a jury would be compelled to find that Officer Guy lacked justification to enter the Plaintiffs' bedroom because he did not perform a lawful protective sweep of the bedroom, nor was he authorized by a warrant, exigent circumstances, or consent to enter. The Court must now analyze whether Officer Guy's conduct also violated Article II, Section 10 of the New Mexico Constitution, which likewise prohibits "unreasonable searches and seizures[.]" N.M. Const. art. II, § 10.

New Mexico's Tort Claims Act (TCA) specifically includes state constitutional violations committed by public officers and governmental entities within the torts for which liability may be found. *Begay v. State*, 1985-NMCA-117, 723 P.2d 252, *rev'd on other grounds by Smialek v. Begay*, 1986-NMSC-049, 721 P.2d 1306. A person cannot sue the public officers and governmental entities for damages for violation of a state constitutional right, however, absent a waiver of immunity under the TCA. *Valdez v. State*, 2002-NMSC-028, ¶ 12, 54 P.3d 71, 77.

5

New Mexico waives immunity "for personal injury, bodily injury, wrongful death or property damage resulting from ... deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." N.M. Stat. Ann. § 41-4-12.

This Court has presumed that New Mexico waives immunity for a cause of action brought under Article II, Section 10. *See, e.g.*, *Montes v. Gallegos*, 812 F. Supp. 1165 (D.N.M. 1992), *Schinagel v. City of Albuquerque*, No. CV 07-481 LH/RLP, 2008 WL 11399610, at *5 (D.N.M. Sept. 9, 2008). With that assumption in place, the Court turns to the merits of Plaintiffs' Article II, Section 10 claim.

Article II, Section 10, like its Fourth Amendment counterpart, states the "broad" right to be free from unreasonable searches and seizures. *State v. Gutierrez*, 1993-NMSC-062, ¶ 46, 863 P.2d 1052, 1065. "Article II, Section 10 embodies the disparate values of privacy, sanctity of the home, occupant safety, and police expedience and safety." *State v. Attaway*, 1994-NMSC-011, ¶ 24, 870 P.2d 103, 113, *modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶ 24, 116 P.3d 80. The New Mexico courts have interpreted this provision as often providing "significantly greater protections than those afforded under the Fourth Amendment." *State v. Rodarte*, 2005-NMCA-141, ¶ 12, 125 P.3d 647, 650

The ultimate question in Article II, Section 10 cases is reasonableness. *Attaway*, 1994-NMSC-011 at ¶ 20. Although the New Mexico courts have avoided bright-line, *per se* rules in determining the reasonableness of searches under Article II, Section 10, they have consistently expressed a strong preference for warrants. *State v. Paul T.*, 1999-NMSC-037, ¶ 9, 993 P.2d 74, 78. Warrantless searches and seizures inside a home are presumptively unreasonable, absent a few narrowly defined exceptions. *State v. Ramos*, 2017-NMCA-041, ¶ 15, 394 P.3d 968, 973. As

6

noted, New Mexico has expressed a "strong preference for warrants" for all searches. *State v. Gomez*, 1997-NMSC-006, ¶ 36, 932 P.2d 1, 11.

Defendants' opposition brief invokes the exigent circumstances exception to the warrant requirement. That exception applies in situations requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. *State v. Moore*, 2008-NMCA-056, ¶ 10, 183 P.3d 158, 161. Police officers' belief as to whether exigent circumstances exist be based on specific, articulable facts. *Id.* at ¶ 14.

Defendants reiterate their argument that Officer Guy's warrantless intrusion into the bedroom was justified because Mr. Ragland and Ms. Silipo were felony auto theft suspects. However, in the Court's prior Order rejecting this claim, which the Court fully incorporates herein, the Court explained that "no record evidence [indicated] that Mr. Ragland and Ms. Silipo's alleged auto theft involved violence or that the two were armed and dangerous." Order at 14. In addition, the evidentiary record indicated no problems at the scene. Both officers and Smith/Denton household members freely moved about the home and there was no indication that the "officers felt the need to draw their weapons or saw dangerous items or persons in plain view." *Id*. Thus, while the record contains some facts supporting a conclusion that Mr. Ragland's unknown whereabouts posed a risk of danger, those facts are not so overwhelming to dispense with New Mexico's "strong preference for warrants" for a search. *Gomez*, 1997-NMSC-006 at ¶ 36.

Defendants also claim that Officer Guy conducted a protective sweep of the bedroom. A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Ramos*, 2017-NMCA-041 at ¶ 29. "A protective

sweep may be undertaken if the searching officers possess a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrants the officer in believing that the area swept harbored an individual posing a danger to the officer or others. However, a protective sweep is only allowed incident to a lawful arrest." *Id*.

For the same reasons discussed in its prior Order and incorporated herein, the Court holds that the factfinder could not conclude that Officer Guy conducted a protective sweep. First, the sweep of the bedroom was not done incident to an arrest but was instead conducted before arresting Mr. Ragland. *See State v. Trudelle*, 2007-NMCA-066, ¶ 22, 162 P.3d 173, 180 (holding as invalid protective sweep conducted before arresting the suspect); *State v. Valdez*, 1990-NMCA-134, ¶¶ 10-11, 806 P.2d 578, 580 (same). Second, under New Mexico caselaw officers lacked specific, articulable facts suggesting either that Mr. Ragland or another third-person on the scene was so dangerous that Officer Guy had to enter the bedroom as a result. *See State v. Jacobs*, 2000-NMSC-026, ¶ 38, 10 P.3d 127, 140 *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 38, 478 P.3d 880 (upholding protective sweep of murder suspect's home where officers "were investigating a violent crime in which a gun had been used," and "had no way of knowing who was in the house or what weapons might be there," after observing a third-person enter the house while it was under surveillance); *State v. Chavez*, No. A-1-CA-33761, 2018 WL 7021935, at *6 (N.M. Ct. App. Dec. 17, 2018) (upholding sweep of defendant's home where several vehicles not belonging to the defendant were parked outside of his house and the defendant was a suspected drug kingpin and murderer who was actively trafficking methamphetamine); *see also United States v. Torres-Castro*, 470 F.3d 992, 998-99 (10th Cir. 2006) (upholding protective sweep where officers "observed several individuals retreat into the

back rooms of the house as they approached," and the officers "had information that [the defendant] possessed a weapon and had threatened to use it[.]") Here, there is an insufficient showing that officers had concrete information that Mr. Ragland or another person was so dangerous that entering the bedroom was necessary.

In summary, the material facts, even viewed in Officer Guy's favor, do not show that Guy performed a lawful protective sweep of the Smith/Denton bedroom.

### ii. The City of Hobbs

Concerning the City of Hobbs' liability, Plaintiffs simply state: "the City is responsible under respondeat superior for the unlawful acts of its employees." ECF No. 44 at 2. Because the Court lacks the necessary facts, law, and argument from Plaintiffs needed to resolve whether the City of Hobbs is liable to Plaintiffs under a theory of *respondeat superior*, the Court does not consider Hobbs' liability, if any, under that doctrine. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("arguments that are inadequately presented in an opening brief ... [, such as those presented] only in a perfunctory manner" are deemed waived or abandoned.)

### III. CONCLUSION

For the reasons explained herein, Plaintiffs Valerie Smith and Josh Ragland's Motion for Summary Judgment **(ECF No. 44)** is **GRANTED** with respect to Plaintiffs' claim against Hobbs Police Department Officer J. Guy but **DENIED** with respect to their claim against the City of Hobbs.

**IT IS SO ORDERED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE